IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

UNITED STATES OF AMERICA    :
    :
v.    :    Criminal Action No.
    :    3:21-CR-0004-TCB-RGV
ROBERT PURBECK    :

## MOTION TO SUPPRESS SEARCHES AND SEIZURES ARISING FROM AUGUST 21, 2019 SEARCH OF DEFENDANT'S HOME AND FRUITS ARISING THEREFROM

Defendant Robert Purbeck hereby respectfully moves to suppress any and all evidence, information, or other matters arising from the illegal searches and seizures that the government conducted on or about August 21, 2019 at his home, located at 451 W. Waterbury Drive, Meridian, Idaho 83646, and further to suppress any and all fruits of arising from these illegal searches and seizures, and any other illegal actions by the government.[1]

The government searched Mr. Purbeck's home after obtaining a search warrant from the United States District Court of Idaho to do so.[2] Law enforcement seized over 50 computers and other digital storage devices, as well as a number of cellphones, paper documents, gift cards, and many other items unrelated to any of

---

[1] Mr. Purbeck is filing under seal a "Notice of Filing Exhibits in Support of Motions," which contains all exhibits referred to in this motion and in the other motions Mr. Purbeck is filing contemporaneously with this motion.  References to "Exhibit __" are to the exhibits contained in that Notice of Filing.

[2] A copy of that search warrant and application has been filed as Exhibit F.

the computer crimes that the government was investigating and that were ostensibly the reason for the search warrant. Mr. Purbeck challenges the search of his home, and all seizures and other fruit thereof, and he respectfully submits that the searches and seizures were without probable cause and were otherwise unlawful, the warrant issued for the searches and seizures was not based on probable cause and was otherwise unlawful, and no exception to the warrant requirement exists that supports the searches and seizures in this case.

The government has only provided Mr. Purbeck with a redacted copy of the search warrant application. Accordingly, based on the information available to him thus far, Mr. Purbeck challenges the warrant that nominally authorized the searches and seizures on the following grounds: (1) law enforcement did not have and/or did not show or leave with Mr. Purbeck the search warrant affidavit and/or any other information describing either the place to be searched or the items to be seized, in violation of the Fourth Amendment's particularity requirement as stated in <u>United States v. McGrew</u>, 122 F.3d 847, 849-50 (9th Cir. 1997);[3] (2) the search warrant was based on illegally-obtained probable cause and contained false and/or omitted

---

[3] Because Idaho – where the warrant was issued and the searches and seizures occurred – is within the boundaries of the United States Court of Appeals for the Ninth Circuit, the law of the Ninth Circuit governs the legality of the government's conduct. <u>See, e.g.</u>, <u>United States v. Ozuna</u>, 129 F. Supp. 2d 1345, 1354 (S.D. Fla. 2001) (adopting "a lex loci (i.e., the 'law of the place' of the conduct) approach" and applying Fourth Circuit law to analyze legality of police-citizen encounter that occurred in Maryland).

material statements that were intentionally or recklessly included or left out, and removing the offending portions results in a warrant that is not based on probable cause; (3) the search warrant was overbroad and did not meet the Fourth Amendment's particularity requirement; (4) law enforcement seized far more than what was authorized under the warrant; and (5) the information presented to the magistrate judge in 2019 concerned events in 2016-2017 and thus was stale, thereby precluding a finding of probable cause.

I.    Redacted Warrant Application and Need for Full Unredacted Application

Thus far, the government has only provided Mr. Purbeck with a redacted copy of the warrant application. Mr. Purbeck has requested the full unredacted copy of the warrant, and the government has refused to produce it. Without the full unredacted warrant application, Mr. Purbeck cannot determine all of the arguments or grounds that he may have to contest the legality of the warrant to search his home. Mr. Purbeck has moved to compel the government's failure to provide a full unredacted copy of the warrant application,[4] and he further respectfully requests and reserves the right to amend and supplement any and all grounds to challenge this warrant until after an unredacted copy of the warrant application has been

_____

[4] Although the government enjoys a limited privilege to protect the identity of a confidential informant, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro v. United States, 353 U.S. 53, 60–61 (1957).

produced and he has had an opportunity to review it in context of the voluminous discovery in this case. Subject to receiving the unredacted search warrant application and based on what Mr. Purbeck has been able to review at present, he raises the following grounds to challenge the legality of the warrant to search his home.

II.   <u>Violation of McGrew</u>

The Fourth Amendment dictates that a search warrant must be sufficiently particular and not overbroad. <u>See, e.g.</u>, <u>Andresen v. Maryland</u>, 427 U.S. 463, 480 (1976); <u>United States v. McGrew</u>, 122 F.3d 847, 849-50 (9th Cir. 1997); <u>United States v. Spilotro</u>, 800 F.2d 959, 963 (9th Cir. 1986). The particularity requirement safeguards the right to be free from unbounded, general searches. <u>McGrew</u>, 122 F.3d at 849-50; <u>United States v. Hillyard</u>, 677 F.2d 1336, 1339 (9th Cir. 1982). Thus, to pass constitutional muster, a warrant "must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." <u>Spilotro</u>, 800 F.2d at 963.

Here, the search warrant itself contained absolutely no description of the types of items sought or the place to be searched. (<u>See</u> Exhibit F). The warrant only referred to "See Attachment A" for the place to be searched and to "See Attachment B" for the things to be seized. Neither "attachment" was shown to Mr. Purbeck and neither "attachment" was part of the search warrant left for him at the

4

end of the search when the agents departed. Rather, all that was left for him was a handwritten inventory of items taken and the single front page of the search warrant that referred to "See Attachment A" and "See Attachment B" without the actual attachments being attached. (See Exhibit A, ¶¶ 39-40). It is unclear whether the attachments were with the agents when they were conducting the search, given that they did not leave those attachments with the warrant's front page.  The affidavit was not attached.

"We have long held . . . that the purpose of the particularity requirement is not limited to the prevention of general searches." Groh v. Ramirez, 540 U.S. 551, 561-62 (2004). A particular warrant also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." Id.

The well-settled law of the Ninth Circuit states that a "'search warrant may be construed with reference to the affidavit for purposes of satisfying the particularity requirement if (1) the affidavit accompanies the warrant, and (2) the warrant uses suitable words of reference which incorporate the affidavit therein.'" Hillyard, 677 F.2d at 1340; see also United States v. Van Damme, 48 F.3d 461, 466 (9th Cir. 1995) (invalidating warrant on these grounds); United States v. Towne, 997 F.2d 537, 544-47 (9th Cir. 1993) (reaffirming rule and

discussing other cases doing same); <u>Spilotro</u>, 800 F.2d at 967 (holding that affidavit could not cure overbroad search warrant because it was not attached to it). The rule requiring affidavits to accompany warrants lacking particularity serves not one aim, but two: "The purpose of the accompanying affidavit clarifying a warrant is both to limit the officer's discretion ***and to inform the person subject to the search what items the officers executing the warrant can seize***." <u>United States v. Hayes</u>, 794 F.2d 1348, 1355 (9th Cir. 1986) (emphasis added); <u>see also</u> <u>McGrew</u>, 122 F.3d at 849-50; <u>accord</u> <u>Center Art Galleries-Hawaii, Inc. v. United States</u>, 875 F.2d 747, 750 (9th Cir. 1989) (attached affidavit "assures that the person being searched has notice of the specific items the officer is entitled to seize" (internal quotation omitted)).

Likewise, the government may not simply refuse to produce an affidavit that it contends renders an otherwise general warrant lawful. <u>McGrew</u>, 122 F.3d at 850. If the government wishes to keep an affidavit under seal, it must list the items it seeks with particularity in the warrant itself. <u>Id.</u> The government has a duty to serve the search warrant on the suspect, and "the warrant must contain, either on its face or by attachment, a sufficiently particular description of what is to be seized." <u>Id.</u> Where, as here, the government failed to satisfy these requirements, the search warrant is invalid because it lacked any particularity. <u>Id.</u>

Mr. Purbeck points out to the Court that, although a complete failure to have the attachments present at the time of the search would violate the Fourth Amendment and render the entire warrant invalid, there are some cases suggesting some limitations on the scope of McGrew, at least insofar as requiring that the warrant be presented before the end of the search. See, e.g., United States v. Grubbs, 547 U.S. 90, 99 (2006) ("The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is . . . evidence that the requirement of particular description does not protect an interest in monitoring searches."). There also appears to be some doubt under Ninth Circuit precedent whether the exclusionary rule (i.e., suppression of evidence) is the appropriate remedy for the failure to serve a warrant that is otherwise valid in all material respects. See, e.g., United States v. Hector, 474 F.3d 1150 (2007) (finding exclusionary rule not proper remedy when officers failed to serve otherwise valid search warrant); but see United States v. Thompson, 667 F. Supp. 2d 758, 765 (S.D. Ohio 2009) (applying exclusionary rule where, among other things, officers failed to provide copy of search warrant, and "viewed in the totality of the circumstances, the execution of the search in this case was unreasonable and in violation of the Fourth Amendment"). Accordingly, Mr. Purbeck respectfully requests that the Court hold an evidentiary hearing to determine a factual record as to the execution of the search warrant, including but

not limited to what version of the search warrant was present during the search,

what version of the warrant was left with Mr. Purbeck following the search,

whether a Fourth Amendment violation occurred, and whether the exclusionary

rule should apply.

III.     The Search Warrant is Based on Illegally-Obtained Information and/or
         Information that Should be Stricken Under Franks

Evidence seized as the result of an illegal search may not be used by the

government in a subsequent criminal prosecution. Franks v. Delaware, 438 U.S.

154, 171 (1978). The exclusionary rule is "a judicially created remedy designed to

safeguard Fourth Amendment rights generally through its deterrent effect." United

States v. Calandra, 414 U.S. 338, 348 (1974). Probable cause to support a search

warrant exists when the totality of the circumstances allows the conclusion that

"there is a fair probability that contraband or evidence of a crime will be found in a

particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). This Court's duty in

reviewing the challenged search warrant is "simply to ensure that the [judge

issuing the warrant] had a substantial basis for concluding that probable cause

existed." Id.

To establish probable cause, an affidavit submitted to obtain a search

warrant must state facts that are "sufficient to justify a conclusion . . . that the

property which is the object of the search is probably on the person or premises to

be searched at the time the warrant is issued." Pacific Marine Center v. Silva, 809

8

F. Supp. 2d 1266, 1276 (E.D. Cal. 2011), aff'd, 553 Fed App'x 671 (9th Cir. 2014).

The affidavit must connect the location to be searched to the defendant and link

that location to criminal activity by explaining why the government believed

incriminating evidence may be found at the location. United States v. Hove, 848

F.2d 127, 140 (9th Cir. 1988); United States v. Martin, 297 F.3d 1308, 1314 (11th

Cir. 2002). A bare-bones affidavit that contains nothing more than conclusory

allegations is insufficient to establish probable cause. United States v. Underwood,

725 F.3d 1076, 1081 (9th Cir. 2013); Martin, 297 F.3d at 1314. "Intentional or

reckless omissions by an affiant in a search warrant will invalidate a warrant 'only

if inclusion of the omitted facts would have prevented a finding of probable

cause.'" United States v. Brown, 370 Fed. App'x 18, 21 (11th Cir. 2010) (quoting

Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997)).

Paragraph 28 of the warrant application refers to email messages that the

government obtained from Alphabay, and Paragraph 42 refers to a "private

message" sent by Mr. Purbeck on the Alphabay platform.  (See Exhibit F, ¶28 and

¶42).  These were Mr. Purbeck's private email messages, and he has a right against

government intrusion upon them. See, e.g., United States v. Wilson, 13 Fed. 4th

961, 967 (9th Cir. 2021). As far as Mr. Purbeck has been able to determine, the

government did not obtain a search warrant to access and read his private messages

held on the Alphabay servers/company records. The government's seizures and

searches of these message violates the Fourth Amendment's proscription against unreasonable and warrantless seizures and searches. See id. Accordingly, those paragraphs should be stricken from the warrant application.

Paragraph 49 refers to an IP address of 67.60.251.160 and further claims that this IP address comes back to "Cable One, Inc., an Internet Service Provider that provides service to the Meridian, Idaho area." (See Exhibit F, ¶49). From what Mr. Purbeck has been able to determine, the IP address of 67.60.251.160 comes back to Nampa, Idaho, not Meridian, Idaho. (See Exhibit G). Taken literally, this sentence is true, but it is highly misleading. Here is why.

Both Meridian and Nampa are outside of Boise, Idaho. Traveling due west from Boise, one would first come to Meridian, after about 11 miles; and then to Nampa, after another 11 miles. Based on the 2020 census, Nampa has a little over 100,000 people, (see https://www.idaho-demographics.com/nampa-demographics), and Meridian has about 117,000 people. (See  https://www.idaho-demographics.com/meridian-demographics). Although geographically close, Nampa is not in the Meridian, Idaho area, as it stands as its own city in the State of Idaho.

While Cable One very well may provide service to the Meridian area, it also provides service to the Nampa area, as demonstrated by Cable One being the registered user of IP address 67.60.251.160. In fact, Cable One provides services

throughout the greater Boise area, and it also provides services in several other states: Arizona, Illinois, Mississippi, Missouri, Oklahoma, and Texas. Cable One's "biggest customer concentrations are in the Mississippi Gulf Coast region and in the greater Boise, Idaho region." As of early 2019 (well before the issuance of this warrant), Cable One provided "service to 804,865 residential and business customers out of approximately 2.1 million homes passed as of December 31, 2018. Of these customers, 663,074 subscribed to data services, 326,423 subscribed to video services and 125,934 subscribed to voice services." (See Exhibit H: Cable One, Inc. 2019 Annual Report).

The significance of Cable One's broad service area becomes more pronounced when reading Paragraphs 52, 53, and 54 of the Warrant, all of which refer to an IP address of 67.61.55.127. Paragraph 53 states that this IP address (67.61.55.127) "is registered to Cable One, Inc., an Internet Service Provider that provides service to the Meridian, Idaho area." From what Mr. Purbeck can determine, the IP address 67.61.55.127 is registered in Wharton, Texas. (See Exhibit I). While it may be true that Cable One, Inc. is the registered user of IP address 67.61.55.127 and while it may be true that Cable One, Inc. provides services to the Meridian, Idaho area, it also is true that Cable One, Inc. provides

services to Nampa, Idaho, and Arizona, Illinois, Mississippi, Missouri, Oklahoma, and Texas (including, apparently, Wharton).[5]

The government's failure to advise the court that the particular IP addresses were in Nampa, Idaho and Wharton, Texas, respectively; and that Cable One provided services in multiple states to hundreds of thousands of subscribers (which is particularly significant given the IP address that is in Wharton, Texas, as well as the one in Nampa, Idaho) is an intentional (or at least a reckless) material omission. Law enforcement should have provided this information to the magistrate court for consideration in the probable cause analysis. Instead, law enforcement led the court to believe that there was an IP address directly connected to Meridian, Idaho, when in fact the IP addresses actually were to Nampa, Idaho (an entirely different city) and Wharton, Texas (an entirely different state). Accordingly, under <u>Franks</u>, Mr. Purbeck respectively requests that the Court hold a hearing to address this material omission and thereafter change the references to

---

[5]  This issue about an IP address returning to somewhere other than Meridian, Idaho occurs again in Paragraphs 58 and 59. In those paragraphs, the affidavit refers first to IP address 24.117.83.148 and then to IP address 24.117.84.148. This latter IP address returns to Sioux City, Iowa. (<u>See</u> Exhibit J). Accordingly, the statement "IP address 24.117.84.148 provides service to the Meridian, Idaho area" is false. What is unclear at this point is whether this is simply a scrivener's error, thereby making the statement false, but negligently so, which would preclude a challenge under <u>Franks</u>; or an intentional (or at least reckless) false statement, making a <u>Franks</u> challenge appropriate.

Meridian, Idaho to include correct references to Nampa, Idaho and Wharton, Texas and to include the size and scope of Cable One's subscriber base.

IV.   Particularity and Overbreadth

The Fourth Amendment also requires that a warrant describe with particularity the "things to be seized."  United States v. Barnes, 749 F. Supp. 2d 1124, 1131 (D. Idaho 2010) (citing U.S. Const. Amend. IV; United States v. Brobst, 558 F.3d 982, 993 (9th Cir. 2009)). "Search warrants must be specific in both particularity and breadth." Barnes, 749 F. Supp. 2d at 1131. "Particularity is the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." Id. (internal citation and quotation omitted).

A search warrant must describe the objects to be seized with enough specificity to enable the officer conducting the search to reasonably identify them. Id. That requirement prevents "general, exploratory rummaging in a person's belongings." Id.

In determining whether a warrant is sufficiently particular, the Ninth Circuit has outlined three factors for consideration: (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was

13

able to describe the items more particularly in light of the information available to it at the time the warrant was issued. United States v. Contreras-Aguilar, No. 2:20-CR-00092-SMJ-1, 2021 WL 149014, at *2 (E.D. Wash. Jan. 15, 2021) (citing United States v. Adjani, 452 F.3d 1140, 1148 (9th Cir. 2006)); see also Barnes, 749 F. Supp. at 1131.

When warrants "do not describe the items to be seized with sufficient particularity," the "warrants are invalid because of their general terms." United States v. Embry, 625 F. App'x 814, 817 (9th Cir. 2015). The normal remedy for an overbroad warrant is to sever those portions that are overbroad, but Ninth Circuit precedent does "not allow severance or partial suppression when the valid portion of the warrant is a relatively insignificant part of an otherwise invalid search." Id. at 817 (citing United States v. SDI Future Health, Inc., 568 F.3d 684, 707 (9th Cir. 2009) (internal quotation marks omitted)). When the invalid portions of the warrant "are either inseparable from or predominate over" the valid portions of the warrant, then severance is not the remedy and the entire warrant is invalid. Id.

"If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." Horton v. California, 496 U.S. 128, 140 (1990). The Constitution does not permit use of a

properly limited warrant as a pretext for a general search, or for a search outside the scope of the warrant. United States v. Ewain, 88 F.3d 689, 693 (9th Cir. 1996).

"The question is whether or not the search that was conducted was confined to the authorization given by the magistrate. In determining whether or not a search is confined to its lawful scope, it is proper to consider both the purpose disclosed in the application for a warrant's issuance and the manner of its execution." See, e.g. United States v. Rettig, 589 F.2d 418, 423 (9th Cir. 1978). As explained by the Ninth Circuit in Rettig, "the record establishes that the agents did not confine their search in good faith to the objects of the warrant, and that while purporting to execute it, they substantially exceeded any reasonable interpretation of its provisions. As interpreted and executed by the agents, this warrant became an instrument for conducting a general search. Under the circumstances, it is not possible for the court to identify after the fact the discrete items of evidence which would have been discovered had the agents kept their search within the bounds permitted by the warrant; therefore, all evidence seized during the search must be suppressed." Id. at 423; see also Ewain, 88 F.3d at 693 (questioning the continuing vitality of some of the language in Rettig).

Here, the search warrant suffered from lack of particularity and overbreadth in at least two respects. First, there is no time frame or period of time that restricts the government's search. According to the warrant, they can seize anything

regardless of date, and that is exactly what they did, including seizing floppy disks and other items that had been technologically useless for years. The lack of any time restriction turned this warrant into an illegal general warrant. See, e.g., United States v. Kow, 58 F.3d 423, 428 (9th Cir. 1995) (warrant listing 14 categories of seizable documents, with no time restrictions, was invalid); Matter of Search of Information Associated With Four Redacted Gmail Accounts, 371 F. Supp. 3d 843, 844-845 (D. Or. 2018) (warrant for emails that contained no date limitations was invalid).

Second, Attachment B of the search warrant lists the following paragraphs that are not supported by probable cause and/or fail to provide the executing law enforcement officers with sufficient information and guidance to find the sought items, thereby turning the warrant into an illegal general warrant.  (See Exhibit F). The paragraphs below follow the paragraph numbering in Attachment B to the search warrant (see Exhibit F):

"4.  Records and information relating to AlphaBay, Trade Route, and Wall Street Market marketplace and forums." Although there is a reference to AlphaBay, nothing in the search warrant application authorizes a finding of probable cause as to anything to do with Trade Route or Wall Street Market, unless that is buried under one of the redactions to which Mr. Purbeck has not been privy.

See <u>Barnes</u>, 749 F. Supp. at 1131 ("Search warrants must be specific in both particularity and breadth.")

*"7. Records and information relating to the identity or location of co-conspirators."* This is too vague and too broad for any law enforcement officer to be able to discern what it means and it turns this warrant into an illegal general warrant. <u>See, e.g.</u>, <u>United States v. Washington</u>, 797 F.2d 1461, 1472 (9th Cir. 1986) (in a search for records, "specificity is required to ensure that only the records which evidence crime will be seized and other papers will remain private").

*"10. Records and information relating to personal finances to include bank statements."* (As detailed below, the agents seized large amounts of corporate and business documents, none of which the warrant authorized.) <u>See</u> <u>id.</u>

*"12. Encryption passwords or keys of any kind."* This is too vague and too broad for any law enforcement officer to be able to discern what it means and it turns this warrant into an illegal general warrant. Furthermore, there is no probable cause to seize "keys of any kind." In fact, the lack of particularity in this provision is shown by the agents executing this warrant who gathered up and took with them physical keys for various items other than computers. <u>See</u> <u>id.</u>

*"17.e. Evidence indicating the COMPUTER user's state of mind as it relates to the crime under investigation."* This is too vague and too broad for any

law enforcement officer to be able to discern what it means and it turns this

warrant into an illegal general warrant. See id.

    *"17.m. Contextual information necessary to understand the evidence*

*described in this attachment."* This is too vague and too broad for any law

enforcement officer to be able to discern what it means and it turns this warrant

into an illegal general warrant. See id.

    Third, the manner in which the agents executed the search warrant far

exceeded what was authorized by the warrant. By way of example only (and

without limitation), agents seized the following items, none of which they were

authorized to seize by the warrant:[6]

1. IMG_00012 Silk Alpaca Corporation payroll tax records and tax-returns
2. IMG_00013 Silk Alpaca credit cards statement (Wells Fargo) and business insurance (Hartford)
3. IMG_0015 Sarah Ganger's prescription for medication, and a Safeway membership card
4. IMG_0020 Postage for a Silk Alpaca Ebay sale
5. IMG_0023 Private papers addressed to Sarah Ganger
6. IMG_0024 Silk Alpaca corporation coffee business cards and a prescription savings card
7. IMG_0025 receipts showing gift cards purchased with cash
8. IMG_0026 receipts for merchandise sold by Target on Silk Alpaca's Ebay store

---

[6] Photographs of the above items are Exhibit K; however, because of the large number of items, they are being filed under seal as a separate Notice of Filing.

9.      IMG_0035 intellectual property belonging to Silk Alpaca corporation (logos and other designs)

10.     IMG_0067 Sarah Ganger's phone

11.     IMG_0115 Point of sale device

12.     IMG_0118 badge reader

13.     IMG_0129 Auction sales

14.     IMG_0136 Auction purchase

15.     IMG_0137-IMG_0146 Silk Alpaca Corporation bank COA, Personal Guarantees (Wells Fargo Business accounts)

16.     IMG_0148 Utility bill for the warehouse, Silk Alpaca Credit card statement, Silk Alpaca invoice

17.     IMG_0153 W2's, W4's, 1099's belonging to Silk Alpaca Corporation

18.     IMG_0154 credit card statements, insurance paperwork for Silk Alpaca Corporation

19.     IMG_0155 more receipts for merchandise belonging to Silk Alpaca Corporation

20.     IMG_0158 Point of Sale devices for Silk Alpaca Corporation

21.     IMG_0166 COA Domestic registration Idaho for Silk Alpaca Corporation

22.     IMG_0168 South Dakota SOS registration for Silk Alpaca Corporation

23.     IMG_0171 Passport for Robert Purbeck

24.     IMG_0181 Personal papers and effects, Silk Alpaca corporation ATM receipts, inventory lists for Silk Alpaca Corporations Amazon.co.uk storefront

25.     IMG_0182 wiring diagram for the Ada County courthouse

26.     IMG_0183 Silk Alpaca Corporation tax records

27.     IMG_0195 Insurance for Silk Alpaca Corporation

28.     IMG_0197 Debt collection paperwork for silk alpaca corporation

29.     IMG_0199-200 Childhood diary of Robert Purbeck

30.     IMG_0202 tax documents Silk Alpaca Corporation

31.   IMG_0203 Jonathan Popelar's personal papers and effects and an email address from a defunct search engine provider

32.   IMG_0205 password list from the 1990's

33.   IMG_0206 Check registers Silk Alpaca Corporation

34.   IMG_0210 Silk Alpaca Corporation 2013 Balance Sheet

35.   IMG_0211-0215& 0219-0226 & 0234 various Silk Alpaca Corporation documents

36.   IMG_0218 rebate forms

Under the circumstances of this case, Mr. Purbeck respectfully submits it is not possible for the Court to identify after the fact the discrete items of evidence which would have been discovered had the agents kept their search within the bounds permitted by the warrant. Therefore, all evidence seized during the search must be suppressed because law enforcement turned the search at Mr. Purbeck's residence into a general search and the warrant into a general warrant. See Rettig, 589 F.2d at 423.

V.   Staleness

"Warrant applications based upon stale information fail to create a probable cause that similar or other improper conduct is continuing." United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994). To satisfy the probable cause standard, the government "must reveal facts that make it likely that the items being sought are in that place when the warrant issues." United States v. Domme, 753 F.2d 950, 953 (11th Cir. 1985). For probable cause to exist, the information

20

supporting the government's application for a search warrant must be timely because probable cause must exist when the magistrate judge issues the search warrant. Harris, 20 F.3d at 450.  Warrant applications based upon stale information fail to create probable cause that similar or other improper conduct is continuing. Id.

Here, the government sought the search warrant for Mr. Purbeck's home in late August of 2019. The averments of illegal conduct that they presented to the Court in support of probable cause all occurred in 2016 and 2017, with other activities in 2014 and 2015.  Nothing was presented to the Court from which the Court could determine that Mr. Purbeck was alleged to have continued with his alleged criminal conduct past 2016 or that he likely still possessed evidence of the alleged crimes the government was investigating.  Mr. Purbeck respectfully submits that the information presented by the government to obtain the search warrant for his home was based on information almost two years old and certainly stale under the circumstances presented to the court.  Accordingly, Mr. Purbeck requests that the Court find that search warrant for his home was not based on probable cause to find the items sought by the government.

WHEREFORE, Mr. Purbeck respectfully requests that the Court (1) hold an evidentiary hearing on all matters raised in this motion to suppress and any others

that may be developed at the hearing, (2) establish a briefing schedule for all parties to address the issues raised in this motion to suppress and developed at the evidentiary hearing, and (3) thereafter grant this motion and suppress and exclude from evidence any and all information, material, items, or evidence gathered from the illegal detentions, searches, seizures and interrogations detailed in this motion.

Respectfully submitted, this 13th day of December, 2021.

/s/ *Andrew C. Hall*_____
Andrew C. Hall
Georgia Bar No. 318025
Hall Hirsh Hughes, LLC
150 E. Ponce de Leon Ave., Suite 450
Decatur, Georgia  30030
404/638-5880 (tel.)
404/638-5879 (fax)
andrew@h3-law.com
*Counsel for Defendant Robert Purbeck*

## CERTIFICATE OF COMPLIANCE WITH TYPE AND FONT

## AND CERTIFICATE OF SERVICE

I hereby certify that this motion has been prepared in Courier New font (13 pt.) and consistent with the Local Rules of this Court.

I further hereby certify that I have this date caused a true and correct copy of the foregoing MOTION TO SUPPRESS SEARCHES AND SEIZURES ARISING FROM AUGUST 21, 2019 SEARCH OF DEFENDANT'S HOME AND FRUITS ARISING THEREFROM to be served by filing it with the Clerk of Court using the ECF System that will send notification of such filing to:

Assistant United States Attorney Michael Herskowitz and Nathan Kitchens

This the 13th day of December, 2021.

/s/ Andrew C. Hall
Andrew C. Hall