IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No. |
| | : | 3:21-CR-0004-TCB-RGV |
| ROBERT PURBECK | : | |

## DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION

Defendant Robert Purbeck hereby submits his objections to the Magistrate Court's Report and Recommendation ("R&R") [Doc. 87].

## I.    Venue (R&R at 4-11)

Mr. Purbeck has objected to venue as to Counts 4 and 8, as set forth in more detail in his motion to dismiss for lack of venue (Doc. 30), which Mr. Purbeck hereby incorporates herein by reference.  When even assuming the government's facts are true venue still does not exist, then a defendant's objection to venue can be decided by the court as a matter of law. See United States v. Ayo, 801 F. Supp.2d 1323, 1328 (S.D. Ala. 2011).   It is undisputed that Mr. Purbeck was in Idaho at all relevant times and that the victim of Mr. Purbeck's alleged misconduct for Counts 4 and 8 was in Florida at all relevant times. There is no evidence that either Mr. Purbeck or the victim ever intended to involve the Northern District of Georgia at all. The best the government can muster is that an email or emails **may have** traveled through the Northern District of Georgia going from Mr. Purbeck to

1

the Florida victim, or vice versa. The random transit of an email from Idaho to Florida going through the Northern District of Georgia does not provide a basis for venue in this District. Indeed, this so-called "pass through" theory of venue has been rejected by federal courts. See, e.g., United States v. Brennan, 183 F.3d 139, 146-149 (2nd Cir. 1999); but see United States v. Nall, 146 Fed. Appx. 462 (11th Cir. 2005) compare United States v. Smith, 22 F.4th 1236, 1238 (11th Cir. 2022).

Furthermore, none of the essential elements of either count occurred in Georgia, much less this District. For a jury to find a defendant guilty of violating the Computer Fraud and Abuse Act (Count 4), "the Government must prove that the defendant (1) intentionally (2) accessed without authorization (or exceeded authorized access to) a (3) protected computer and (4) thereby obtained information." See United States v. Willis, 476 F.3d 1121, 1125 (10th Cir.2007). The statute's plain language reveals two essential conduct elements: *accessing* without authorization and *obtaining* information. Id. Wire fraud (Count 8) occurs when "a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or causes the use of the...wires for the purpose of executing the scheme or artifice." See United States v. Bradley, 644 F.3d 1213, 1238 (11th Cir. 2011). Specifically, the wire fraud statute proscribes "transmit[ing]" via the wires. 18 U.S.C. §1343.

None of the essential elements for either the wire fraud statute or the Computer Fraud and Abuse Act occurred in the Northern District of Georgia. Any conceivable email passing through this District was random and fleeting. Accordingly, venue for Counts 4 and 8 is not properly laid in this District. See, e.g., United States v. Auernheimer, 748 F.3d 525, 533 (3d Cir. 2014). For those reasons, and as will be further addressed as necessary, this Court should dismiss Counts 4 and 8 for lack of venue.

## II.   Motion to Suppress Searches of Email Accounts (R&R at 115-125)

Mr. Purbeck objects to the R&R's conclusion that this Court had jurisdiction to issue the 18 U.S.C. §2703(d) Order and the three search warrants for his email accounts. For the reasons set forth in his motion to suppress email searches (Doc. 27 at 1-15), as amended (Doc. 39 at 1-13), and his reply in support of these motions (Doc. 46 at 1-15), all of which Mr. Purbeck hereby incorporates by reference herein, Mr. Purbeck submits that this Court lacked jurisdiction over any offense that he is alleged to have committed at the time this Court issued the §2703(d) Order and the email search warrants and, therefore, the Court lacked the legal authority to issue either the §2703(d) Order or the three search warrants for his email accounts.

The key point here is that, before this Court can issue either the §2703(d) Order or the three search warrants for out-of-district emails, it has to be a court of

competent jurisdiction, which it can be only if it is a court with jurisdiction over the offense being investigated for Mr. Purbeck, which it was not. None of Mr. Purbeck's email account providers are within the State of Georgia, much less the Northern District of Georgia. Thus, Federal Rule of Criminal Procedure 41(b)(1) does not provide a basis to issue a search warrant for Mr. Purbeck's email accounts, and nor do the other provisions of Rule 41. The only way that this Court can issue a warrant for out-of-district records is under the Stored Communications Act ("SCA"), codified at 18 U.S.C. §§2701-2713, which requires this Court to be a "court of competent jurisdiction," which is defined, among other ways, as a district court that has "jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). This is a territorial limitation on the power of courts to issue orders and warrants under §2703. See In re Search Warrant, No. 6:05-MC-168-Orl-31JGG, 2005 WL 3844032, at *5-6 (M.D. Fla. 2005).

Mr. Purbeck's position is that, even under the SCA, this Court lacked jurisdiction to issue the §2703(d) Order or the email search warrants because it was not a district court that had jurisdiction over the offenses being investigated as to Mr. Purbeck in July/August, 2019 when seeking these orders and warrants. Here is why.

There are two allegations of crimes in the application for the §2703(d) Order: (1) an extortion email from someone called "Lifelock" related to a

healthcare provider in California, and (2) a general conclusory allegation that Lifelock sold stolen personal financial and identification information on the internet through a marketplace called AlphaBay, which allegedly is a darknet marketplace. <u>Neither of those allegations regarding crimes say anything about Georgia, much less the Northern District of Georgia.</u>

Indeed, the only reference to the Northern District of Georgia is in paragraph 11 of the application when it says that Bitpay, an Atlanta-based bitcoin payment processor, processed some bitcoin transactions from "Studmaster 1" – a different account from Lifelock, but one that law enforcement alleged was controlled by the same person as Lifelock. Nothing about the Studmaster 1 bitcoin transactions with Bitpay is alleged to have been illegal. There is no allegation that any bitcoin transactions involving Studmaster 1 and Bitpay (the Atlanta connection) are illegal. Therefore, based on the application for the §2703(d) Order, it is impossible for this Court to have jurisdiction over any crime involving Mr. Purbeck such that it would be a court of competent jurisdiction for purposes of issuing a §2703(d) Order for Mr. Purbeck's [rpurbeck@gmail.com](mailto:rpurbeck@gmail.com) account with Google. (Doc. 39 at 1-5).

A similar, but slightly different problem, exists with the three search warrants that were issued for Mr. Purbeck's various email accounts. According to the search warrant applications, "Lifelock" (who allegedly is actually Mr. Purbeck acting under the alias "Lifelock") is alleged to have sent extortion emails to three

victims: one in California, one in Michigan, and one in Massachusetts. (See Doc.
39 at 5-6). <u>Once again, Lifelock is not alleged to have committed any crimes
against anyone in Georgia, much less in this District.</u> The Bitpay transactions are
alleged again, but this time there is no mention that Bitpay is an Atlanta-based (or
Georgia-based) entity, or otherwise has any ties to this District. And, as before,
there were no allegations that any of these Bitpay transactions were criminal in
nature.

The way in which the government attempts to connect Lifelock to Georgia is
through earlier paragraphs in which the search warrant affidavit alleges that
"TDO," a hacker group also known as "thedarkoverlord," includes Lifelock within
its membership. (See, e.g., Doc. 39 at 6). Lifelock is not alleged to have committed
any offenses in Georgia, either individually or through TDO. Rather, TDO is
alleged to have stolen healthcare provider information "from an unidentified health
care provider in Georgia" (but not necessarily in the Northern District of Georgia)
and, thereafter, law enforcement while located in the Northern District of Georgia
purchased some of these stolen healthcare records. (See Doc. 39 at 6). There is no
allegation that Lifelock (or Mr. Purbeck under any variation) stole these records
from the Georgia healthcare provider or sold any of these Georgia records to the
law enforcement agents who were sitting in the Northern District of Georgia.

There is nothing in the search warrant affidavits to support the proposition that this Court had jurisdiction over the offenses being investigated as to Mr. Purbeck. Accordingly, this Court lacked jurisdiction to issue the warrants under the SCA for Mr. Purbeck's email accounts.

### III.  Motion to Suppress Statements/Passwords[1]

### A. Mr. Purbeck was in Custody when Interrogated

Mr. Purbeck objects to the R&R's conclusion that he was not in custody while being interrogated. For the reasons set forth in his motion to suppress statements (Doc. 25), his post-hearing brief (Doc. 80), and his reply brief in support thereof (Doc. 85), all of which Mr. Purbeck incorporates by reference herein, Mr. Purbeck submits that he was in custody while being interrogated.

Because of the increased risk of an in-home interrogation during a search warrant being custodial, the Ninth Circuit, unlike the Eleventh Circuit, looks at the following factors: (1) the number of law enforcement personnel and whether they were armed, (2) whether the suspect was at any point restrained, either by physical force or by threats, (3) whether the suspect was isolated from others, and (4)

---

[1] Mr. Purbeck maintains his position that Ninth Circuit law applies to the legal issues addressed in his motion to suppress statements/passwords. (Doc. 25 at 6; Doc. 80 at 12-14; Doc. 85 at 1-8). The R&R does not decide this question, concluding that he loses under both Eleventh Circuit or Ninth Circuit law.  Mr. Purbeck submits that, under Ninth Circuit precedent, the Court should grant his motion.

whether the suspect was informed that he was free to leave or terminate the interview, and the context in which any such statements were made. United States v. Herran, No. 20-10157, 2021 WL 5027488, at *1 (9th Cir. 2021). The Ninth Circuit also looks at (1) the language used to summon the individual, (2) the extent to which the defendant is confronted with evidence of guilt, (3) the physical surroundings of the interrogation, (4) the duration of the detention, and (5) the degree of pressure applied to detain the individual. Id.. The question ultimately is whether a defendant's home has become a police-dominated atmosphere such that the comfort and familiarity with the surroundings of home no longer exist.

Mr. Purbeck cited and relied on Herran extensively in his briefing with the Magistrate Court because that case was a very recent pronouncement by the Ninth Circuit and its facts were similar to (and in many ways less invasive than) the facts facing Mr. Purbeck. (See Doc. 80 at 14-17; Doc. 85 at 5-12; see also United States v. Herran, No. CR17-01026-TUC-RCC(JR), 2019 WL 3068435 (D. Ariz. 2019) (Report and Recommendation by magistrate court and setting out facts of case more extensively than in the Ninth Circuit opinion)). And yet, the R&R essentially ignores Herran, despite Herran being the case most directly on point and recently decided, not to mention the case relied on extensively by Mr. Purbeck.

According to the Herran magistrate court, "Herran was never restrained by physical force or intimidation during the questioning. He was never handcuffed or

threatened. In fact, he testified that the agents treated him respectfully and [an agent] testified that there was no physical contact between the agents and Herran. And, unlike [United States v. Craighead, 539 F.3d 1073 (9th Cir. 2008)], Herran was not isolated from others and was not prevented from speaking with his wife." Id. at *3. Additionally, "[a]lthough he was twice moved for questioning, both moves were precipitated by the barking of his dogs and were not attempts to isolate or enclose him from others and he was always in an open area." Id. The "questioning of Herran spanned approximately two hours." Id.

The magistrate court denied Herran's motion to suppress, finding that his questioning was non-custodial. The district court adopted the Report and Recommendation. **The Ninth Circuit reversed, finding that Herran's questioning occurred in the police-dominated atmosphere of his home.** "Although Herran was told he was free to leave near the beginning of the interview, 'the mere recitation of that statement does not render an interrogation non-custodial *per se*' and must be assessed 'within the context of the scene as a whole.'" United States v. Herran, No. 20-10157, 2021 WL 5027488, at *2 (9th Cir. 2021) (citing United States v. Craighead, 539 F.3d 1073, 1088 (9th Cir. 2008)). "The length of the interrogation [2 hours], the number of armed agents [8-11], and the way in which the agents directed and escorted Herran around his own property turned the otherwise comfortable and familiar surroundings of the home into a

police-dominated atmosphere." Herran, 2021 WL 5027488, at *2 (internal

punctuation omitted). "Herran was also confronted with evidence of his guilt and

pressured to confess." Id.

Mr. Purbeck was subjected to much worse conditions than those experienced

by Herran. Accordingly, just as Herran's interrogation was custodial under Ninth

Circuit law, so too was Mr. Purbeck's in-home interrogation in this case.[2]

Early in the morning on August 21, 2019, Mr. Purbeck unexpectedly

encountered multiple armed FBI agents at his home: there were at least 14 FBI

employees (9 agents and 5 other FBI personnel), including multiple officers, with

their guns drawn when approaching Mr. Purbeck's house. The FBI restrained Mr.

Purbeck. The FBI conducted a pat-down search of Mr. Purbeck for weapons, took

his car keys, and told him that his employer (Ada County) knew he would not be

coming to work that morning. The FBI guided Mr. Purbeck through his house and

into the backyard, where they had arranged three chairs in the sun. When Mr.

Purbeck tried to sit in one of the chairs so that he was not facing the sun, the agents

directed him to a different chair where the sun would shine in his eyes. (Doc. 80 at

4). The agents also took both Mr. Purbeck's personal and work phones, denying

his request to keep his work phone.

---

[2] (See Doc. 80 at 1-12, for record citations to the facts set forth below).

The FBI kept Mr. Purbeck isolated from others. Throughout the entire time the FBI was present, they kept Mr. Purbeck outside in the backyard, except for a one-time bathroom break, and they kept his girlfriend Sarah Ganger inside the home. (See Doc. 80 at 10-11).

Even crediting the agents' testimony, as the R&R does, that they told Mr. Purbeck he was not under arrest and did not have to stay, but if he did stay then they would restrict his movements, the "the mere recitation of that statement does not render an interrogation non-custodial *per se*" and it must be assessed "within the context of the scene as a whole.'" Herran, 2021 WL 5027488, at *2 (defendant told he was free to leave); Craighead, 539 F.3d at 1088 (defendant was told he was free to leave). There is considerable doubt whether either agent actually told Mr. Purbeck that he was free to leave or not under arrest, given that such an important fact undisputedly was not memorialized in their extensive case report, and Mr. Purbeck specifically testified that they did not tell him any such thing. (Doc. 80 at 2-3). But even if they did, that mere recitation does not make his interrogation non-custodial. See, e.g., Herran, supra.

The language used to summon Mr. Purbeck also weighs in favor of finding the interrogation custodial. Mr. Purbeck did not volunteer to meet the officers at the police station, his office, or his home. See United States v. Kim, 292 F.3d 969, 974-975 (9th Cir. 2002). Rather, he was confronted unexpectedly by armed FBI

11

agents, early in the morning, at his home, subjected to a pat-down for weapons, and then led, or accompanied, by agents through his house and into his backyard.

The FBI confronted Mr. Purbeck with evidence of his guilt regarding Alphabay and related online identities he controlled. The FBI also used stern and forceful tones when addressing Mr. Purbeck when they believed that he was not being fully cooperative with them. The physical surroundings of his interrogation were oppressive. Although in his own backyard, he was told where to sit and to remain seated when he went to retrieve his cat; he was guarded throughout; he was kept outside throughout; he was denied access to his car keys and to both his personal and work phones; he was denied access to the interior of his house (except for a single trip to the bathroom); and he was kept in the sun, and away from the shade, throughout.

Mr. Purbeck's detention of 3.5 hours (see R&R, at 37) was unreasonably and overly lengthy, as was his interrogation. Even the magistrate court in Herran noted, when finding that the interrogation was not custodial, that the two-hour interrogation was "the Court's biggest concern" because it was a "full-fledged interrogation, not a brief inquiry." Herran, 2019 WL 3068435, at *4. And of course, the Ninth Circuit reversed that case, citing the "length of the detention" as one of the factors showing it was a custodial interrogation. Herran, 2021 WL 5027488 at *2 (2-hour interview); see also United States v. Blanford, 467 Fed.

Appx. 624, 625 (9th Cir. 2012) (45-minute in-home interrogation was custodial). The FBI kept Mr. Purbeck in his backyard for at least 6 hours, at least 3 hours (and likely longer) of which were spent interrogating him.

Applying the factors from Herran, Craighead, and Kim, Mr. Purbeck respectfully submits that he was in custody and, therefore, the FBI was required to have read him his Miranda rights. Accordingly, the R&R was wrong in reaching the conclusion that Mr. Purbeck was not in custody during his FBI interrogation.[3]

### B. **Mr. Purbeck's statements and password disclosures were involuntary**

Mr. Purbeck objects to the R&R's conclusion that his inculpatory statements, as well as his disclosure of his computer and on-line passwords and consent to access his on-line accounts, were voluntary. For the reasons set forth in his post-hearing brief (Doc. 80 at 19-23), which Mr. Purbeck hereby incorporates by reference herein, Mr. Purbeck submits that his statements to law enforcement and his disclosure of his computer and on-line passwords were involuntary. Mr. Purbeck was placed in the sun for an extended period, without water, while being questioned by the FBI at length, all of which rendered his statements, disclosures, and consent involuntary. (See Doc. 80 at 1-12, 19-23). He objects to the R&R's contrary conclusion. Furthermore, and contrary to the R&R, to which he objects, Mr. Purbeck was placed in a position of either talking to law enforcement or

---

[3] It is undisputed that law enforcement interrogated Mr. Purbeck. (See R&R at 30).

potentially losing his job, which further rendered his statements involuntary. (Doc. 80 at 21-22); see also Garrity v. New Jersey, 385 U.S. 493 (1967).

### C. **Mr. Purbeck requested an attorney**

Mr. Purbeck objects to the R&R's conclusion that he did not request an attorney.  As detailed in his post-hearing brief (Doc. 80 at 24-25) and his motion to suppress (Doc. 25 at 19-20), Mr. Purbeck unambiguously and unequivocally requested an attorney, and law enforcement denied his request. The agents took both Mr. Purbeck's personal and work phones, and they denied his request to keep his work phone. When Mr. Purbeck requested access to the phones the FBI had taken so that he could contact an attorney, the FBI refused him access. When Mr. Purbeck requested to use the FBI's phones to call an attorney, his request was also denied. Despite asking clearly and plainly to contact an attorney, the FBI denied him the ability to contact an attorney, and that is an undisputed violation of his constitutional right to counsel. Contrary to the R&R's conclusion on page 60, Mr. Purbeck's willingness to answer questions to Ada County about Ada County matters (and matters that the government concedes they do not intend to use, see Doc. 82 at 7 n.3), after having already confessed to the FBI does not change that analysis. See, e.g., Missouri v. Seibert, 542 U.S. 600, 608 (2004). By the time Ada County appeared, Mr. Purbeck had been in the sun, heat, and humidity for at least 3.5 hours (and most likely longer), and the weather conditions had only become

14

hotter and more humid, (see Doc. 76 at Gov't Exh. 5), thereby further undercutting that any acquiescence to Ada County's authority is relevant to show the voluntariness of his statements to the FBI or his desire for an attorney. Indeed, by the time Ada County had appeared, the FBI had rejected Mr. Purbeck's repeated requests for an attorney. Mr. Purbeck clearly and unequivocally invoked his right to legal counsel, and the R&R was wrong to conclude otherwise.

## IV.   **Motion to Suppress Evidence from Search of House[4]**

### A.   **The Court should hold a hearing on the issue on whether law enforcement had the attachments and the affidavit to the search warrant with them during the search (R&R at 79-84)**

Mr. Purbeck is entitled to an evidentiary hearing regarding whether the complete search warrant (with required attachments) was present during the search of his home and why a complete copy was not left at his house following the search. A factual issue also remains regarding whether the affidavit was present at the time of the search, with the R&R's reliance on the affidavit to cure various problems related to the lack of particularity and overbreadth of the warrant further emphasizing this open factual issue. Mr. Purbeck moved to suppress the search warrant of his home, based on among other things, the failure of law enforcement to leave a complete copy of the search warrant at his home, which at a bare

---

[4] Ninth Circuit law applies to the issues regarding the search of Mr. Purbeck's residence. (See Doc. 38 at 2 n.3).

minimum leads to the inference that law enforcement did not have a complete copy of the search warrant with them during the search. Mr. Purbeck's contention is that they left only the cover page of the search warrant, which references both an "Attachment A" (for place to be searched) and an "Attachment B" (for items to be searched for and seized), but they did not leave the attachments themselves.

As the R&R recognized, under United States v. Manaku, 36 F.4th 1186 (9th Cir. 2022), Mr. Purbeck's complaint that only the front page of the warrant was left at the conclusion of the search, and not attachments A and B, which undisputedly form a part of the warrant itself, lead to suppression only if Mr. Purbeck can show either that (1) he was prejudiced by the error, or (2) there is evidence of "deliberate disregard" of Federal Rule of Criminal Procedure 41. Manaku, 36 F.4th at 1190; see also R&R at 83. The Magistrate Court, however, refused to grant Mr. Purbeck an evidentiary hearing to develop the facts regarding this issue.

Without the opportunity to question witnesses at an evidentiary and/or subpoena documents for production at a hearing, it is virtually impossible for Mr. Purbeck to show a deliberate disregard by law enforcement unless one of them was dumb enough to write that they had deliberately disregarded their legal obligations in a report that was produced by the government in discovery – about as unlikely a scenario as one can imagine. This Court should grant Mr. Purbeck an evidentiary hearing so that he can develop the grounds that he has raised regarding law

enforcement's failure to leave him a complete copy of the warrant, including but not limited to whether they had a complete copy with them during the search.

First and foremost, Mr. Purbeck has alleged that he suffered prejudice. "Prejudice in this context means the search would otherwise not have occurred or would have been less intrusive absent the error." United States v. Negrete-Gonzales, 966 F.2d 1277, 1283 (9th Cir. 1992); see also Manaku, 36 F.4th at 1190 (same). Here, as Mr. Purbeck has detailed at great length in his motion to suppress, law enforcement seized all sorts of items that were beyond the scope of the warrant. (See Doc. 26 at 16-20; Doc.  47 at 11-12). Furthermore, Mr. Purbeck took legal steps that are now being used against him (e.g., submitting to a proffer with the government) that he would not have taken had a complete copy of the search warrant been left for him. Accordingly, he has more than shown that "the search would otherwise not have occurred" or at a bare minimum "would have been less intrusive absent the error." Additionally, these are all points he would develop further during an evidentiary hearing.

Second, during this same evidentiary hearing, he would question the agents who were responsible for the search and, therefore responsible for leaving him only the face page of the warrant, and have them answer under oath, among other questions, why they left only the front page of the search warrant, whether they even had attachments A and B with them during the search, whether they had read

17

attachments A and B, whether they had advised the other members of the search team as to the contents of attachments A and B, and why they seized so much of Mr. Purbeck's property that was so plainly not within the scope of what was listed in attachments A and B, all of which would show a deliberate disregard of Rule 41.

Third, Mr. Purbeck had asked for an evidentiary hearing regarding the factual development of the failure to leave a complete copy of the search warrant with him and whether the officers even had a complete copy of the search warrant with them. He stated in his sworn declaration in support of his motion to suppress that he believed only the face page was left at his residence and not any of the exhibits. (See Purbeck Affidavit, at §§39-40, filed as Exhibit A to Dec. 13, 2021 Notice of Filling Exhibits). He specifically requested an evidentiary hearing regarding the factual issues surrounding this topic.  (Doc. 26 at 7-8; Doc. 47 at 1; Doc. 76 at 4-6 (confirming that an additional request had been made via emailed letter to the Magistrate Court)). The Court should grant him the evidentiary hearing that he has been requesting.

Fourth, the R&R specifically relies on the affidavit to solve the search warrant's lack of particularity and overbreadth. (See R&R at 107-108, n. 42 and n.43). But an affidavit can only be used to cure a warrant's lack of particularity and overbreadth if it is present during the search, and it is incorporated by reference into the search warrant. A "search warrant may be construed with reference to the

affidavit for purposes of satisfying the particularity requirement if (1) the affidavit accompanies the warrant, and (2) the warrant uses suitable words of reference which incorporate the affidavit therein." United States v. Hillyard, 677 F.2d 1336, 1340 (9th Cir. 1982).; see also United States v. Van Damme, 48 F.3d 461, 466 (9th Cir. 1995) (invalidating warrant on these grounds); United States v. Towne, 997 F.2d 537, 544-47 (9th Cir. 1993) (reaffirming rule and discussing other cases doing same); United States v. Spilotro, 800 F.2d 959, 967 (9th Cir. 1986) (holding that affidavit could not cure overbroad search warrant because it was not attached to it). Whether the affidavit was present during the search remains an open fact question on which Mr. Purbeck is entitled to an evidentiary hearing.

For all of these reasons, Mr. Purbeck respectfully requests that the Court hold an evidentiary hearing regarding whether the search warrant with necessary attachments (which identify where to search and what to search and seize) was present at the search, whether the search warrant affidavit was present at the search, and whether the failure to leave a complete copy of the search warrant (with attachments) with Mr. Purbeck was in "deliberate disregard" of Federal Rule of Criminal Procedure 41. See, e.g., Manaku, 36 F.4th at 1190; see also R&R at 83.

### B.   Search Warrant Not Founded on Probable Cause

Mr. Purbeck respectfully objects to the R&R's conclusion that the search warrant was based on probable cause.

1.  **The Court should strike the CHS information**

Mr. Purbeck objects to the R&R's conclusion that the information from confidential human source ("CHS") should not be stricken from the search warrant affidavit. (See Doc. 38 at 8-12). The CHS, who is really an on-line sleuth with the moniker "Dissent," did not "learn" her information through her employment; rather, she had a hobby of investigating various internet matters, a point that law enforcement kept from the issuing magistrate judge. Law enforcement provided no independent information from which the issuing magistrate judge could assess the CHS's veracity or basis for knowledge. Rather, the affidavit simply posits that the CHS claims to have had conversations with Lifelock and the FBI has found the CHS to be reliable in the past, but the affidavit provides no facts from which the magistrate judge could assess the accuracy of these conclusory declarations. At the time that the magistrate court was considering the search warrant, there was no information before it that Purbeck had acknowledged he had communicated with the CHS. Therefore, the R&R's point about that subsequent acknowledgment by Mr. Purbeck is not part of any probable cause analysis. (See R&R at 90).

Furthermore, the R&R concludes that it could remove the entirety of paragraph 34 from the search warrant affidavit and still find probable cause. But that is incorrect. Removing paragraph 34 means that paragraph 35 must also be removed,

but even more importantly it means the probable cause allegedly connecting Mr. Purbeck to TDO no longer exists (which connection was false anyway).

### 2. **Mr. Purbeck had a 4th Amendment Right in his emails with Alphabay**

Mr. Purbeck objects to the R&R's conclusion that the government did not need a search warrant to obtain the contents of his emails (and other electronic messages) sent via Alphabay because he lacked a Fourth Amendment protectible interest in his emails. The Fourth Amendment protects Mr. Purbeck's emails that are sent through a third-party email system.  See, e.g., United States v. Wilson, 13 F.4th 961, 967 (9th Cir. 2021); United States v. Miller, 982 F.3d 412, 426 (6th Cir. 2020); United States v. Warshak, 631 F.3d 266, 288 (6th Cir. 2010). Similarly, the record in this case does not support the government's mere allegation, which the R&R appears to have adopted, that Alphabay is some sort of entirely criminal enterprise for which Fourth Amendment protections do not apply. (See R&R at 94). Indeed, the case cited in the R&R (United States v. 2013 Lamborghini Aventador LP700-4, No. 1:17-cv-00967-ljo-sko, 2018 WL 3752131 (E.D. Cal. 2018)), is a report and recommendation quoting the allegations in a complaint in a civil forfeiture action, none of which is proof in this record for this case.

### C. **Particularity and Overbreadth**

Mr. Purbeck objects to the R&R's conclusions that the search warrant for his house was illegal because of a lack of particularity as well as being overly broad.

As set forth in his motion to suppress (Doc. 38 at 18-23), which Mr. Purbeck

incorporates by reference herein, the search warrant suffered from lack of

particularity and overbreadth in at least two respects. First, there is no time frame

or period of time that restricts the government's search. According to the warrant,

they can seize anything regardless of date, and that is exactly what they did,

including seizing floppy disks and other items that had been technologically

useless for years. The lack of any time restriction turned this warrant into an illegal

general warrant. See, e.g., United States v. Kow, 58 F.3d 423, 428 (9th Cir. 1995)

(warrant listing 14 categories of seizable documents, with no time restrictions, was

invalid); Matter of Search of Information Associated With Four Redacted Gmail

Accounts, 371 F. Supp. 3d 843, 844-845 (D. Or. 2018).

Second, Attachment B of the search warrant lists items that the Court

authorized law enforcement to search for and seize. As Mr. Purbeck detailed in his

amended motion to suppress (Doc. 38 at 21-23) and exhibits referenced therein

(i.e., Exhibit F to the December 13, 2021 Notice of Filing Exhibits), there is a

lengthy list of paragraphs and items that (1) are not supported by probable cause

and/or (2) fail to provide the executing law enforcement officers with sufficient

information and guidance to find the sought items, thereby turning the search

warrant into an illegal general warrant. The R&R summarily discounts this

argument, and Mr. Purbeck submits wrongfully so. Many of the items seized by

law enforcement are so far afield from any possible item for which probable cause existed that this search warrant was turned into an illegal general warrant. See also United States v. Bridges, 344 F.3d 1010, 1018 (9th Cir. 2003).

### D.   Staleness

Mr. Purbeck objects to the R&R's conclusion that the information in the search warrant affidavit was not stale. As explained in his amended motion to suppress (Doc. 38 at 23-25), which Mr. Purbeck hereby incorporates by reference herein, the information relied on by the government to seek probable cause was stale. The government sought the search warrant for Mr. Purbeck's home in late August of 2019. The averments of illegal conduct that they presented to the Court in support of probable cause all occurred in 2016 and 2017, with other activities in 2014 and 2015. Nothing was presented to the Court from which the Court could determine that Mr. Purbeck was alleged to have continued with his alleged criminal conduct past 2016 or that he likely still possessed evidence of the alleged crimes the government was investigating. Mr. Purbeck respectfully submits that the information presented by the government to obtain the search warrant for his home was based on information almost two years old and certainly stale under the circumstances presented to the court.

### E.   __Leon's Good Faith Exception does not apply__[5]

Mr. Purbeck objects to the R&R's conclusion that the good faith

exception of __Leon__ saves the warrant from any unconstitutional problems. As

explained in Mr. Purbeck's amended motion to suppress (Doc. 38) and his reply

brief in support thereof (Doc. 47), both of which Mr. Purbeck incorporates by

reference herein, the issuing magistrate court was misled by false information

and omissions that were knowingly or recklessly included or omitted and the

warrant was based on stale information from at least 2 years prior to application

for the search warrant.  Given these deficiencies, the warrant was so lacking in

indicia of probable cause that reliance on the warrant was unreasonable. But

even if the Court were to set those issues aside, as the R&R does, the failure to

particularize the items to be seized and the overbreadth inherent in the warrant

as written, and as further shown by the overbroad execution of the search

warrant by the agents, also precludes saving this warrant under the __Leon__ good

faith exception. See __United States v. Lofstead__, 574 F. Supp. 3d 831, 846 (D. Nev

---

[5] The R&R does not address any arguments regarding inevitable discovery, which have not been fully developed either factually or through briefing. As Mr. Purbeck has previously stated, an evidentiary hearing is needed, at which Mr. Purbeck would call his court-approved expert witness (Jim Persinger) to testify, followed by additional briefing before the record is ripe for consideration of inevitable discovery. (See also Doc. 85 at 14-15). Additionally, the government's taking 870+ days to access Mr. Purbeck's computer using a password very similar to the ones already disclosed to the government contradicts any claims that breaking the passwords used by Mr. Purbeck was easy or trivial.

2021) (overly broad warrant not saved by <u>Leon</u> good faith exception).

## V.  <u>January, 2022 search of laptop computer and Warrant 1:21-MC-1981</u>

Mr. Purbeck moved to suppress the searches authorized under Search Warrant Number 1:21-MC-1981 as well as a search the government conducted in January, 2022 of a laptop computer it seized on August 21, 2019 because those searches were fruits of the earlier illegalities set forth in his motion to suppress the search of his residence. (<u>See</u> Docs, 27, 39, and 46, which Mr. Purbeck incorporates by reference herein).  The R&R ruled against Mr. Purbeck (R&R at 126-127), and Mr. Purbeck objects to the R&R for the reasons set forth in his amended motion to suppress and supporting briefs. (Docs. 27, 39, and 46). Additionally, Mr. Purbeck specifically moved to suppress the January, 2022 search of his computer because of the unreasonable delay (870+ days) in conducting a search of his computers. (Doc. 39 at 20, which he incorporates by reference herein). The delay of over well over 2 years is per se unreasonable and reason alone to grant his motion to suppress the January, 2022 search of his computer. <u>See, e.g.,</u> <u>United States v. Wilkins</u>, 538 F. Supp. 3d 49, 95 (D.D.C. 2021) (15-month delay in searching smart phone was unreasonable and required suppression).  The R&R was wrong in ruling otherwise.

WHEREFORE, Mr. Purbeck respectfully requests that the Court (1) grant him an evidentiary hearing, as requested, (2) reject the R&R, and (3) grant his various motions to suppress and the relief sought therein.

Respectfully submitted, this 26th day of June, 2023.

/s/ *Andrew C. Hall*_____
Andrew C. Hall
Georgia Bar No. 318025
Hall Hirsh Hughes, LLC
150 E. Ponce de Leon Ave., Suite 450
Decatur, Georgia  30030
404/638-5880 (tel.)
andrew@h3-law.com
*Counsel for Defendant Robert Purbeck*

<u>CERTIFICATE OF COMPLIANCE WITH TYPE AND FONT</u>

<u>AND CERTIFICATE OF SERVICE</u>

I hereby certify that this motion has been prepared in Times New Roman font (14 pt.) and consistent with the Local Rules of this Court.

I further hereby certify that I have this date caused a true and correct copy of the foregoing DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION to be served by filing it with the Clerk of Court using the ECF System that will send notification of such filing to:

Assistant United States Attorneys Michael Herskowitz and Alex Sistla

This 26th day of June, 2023.

<u>/s/ Andrew C. Hall</u>
Andrew C. Hall