IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No. |
| | : | 3:21-CR-0004-TCB-RGV |
| ROBERT PURBECK | : | |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS 2023 SEARCHES of iPHONES

Defendant Robert Purbeck hereby files his reply brief in support of his motion to suppress the results and fruits of the searches of his iPhone 8 plus (the "iPhone 8") and iPhone 7 (the "iPhone 7") that the government conducted in May, 2023 and that are the subject of his motion to suppress on this topic. (Doc. 99).

On August 21, 2019, the government seized Mr. Purbeck's two cellphones: the iPhone 8 and the iPhone 7. The government has had exclusive control of his cellphones since that date. Almost four years after this seizure, the government extracted, for the first time, the contents of Mr. Purbeck's two cellphones. It is these searches of Mr. Purbeck's cellphones on May 30 and 31, 2023 that are the subject of Mr. Purbeck's motion to suppress.

First, Mr. Purbeck is aware of no warrant issued since August 19, 2019 (the date that the District Court of Idaho issued the warrant to search Mr. Purbeck's residence) that authorizes the search of his cellphones. The government has not

argued otherwise. So, to the extent the government's 2023 searches of his cellphones are constitutional, then the government is relying on the 2019 warrant.[1]

Second, the searches that Mr. Purbeck is challenging are the May, 2023 searches of his iPhones, not the initial seizure of those phones in 2019. The initial seizure of the phones was an issue that Mr. Purbeck previously raised and on which the Court has ruled against him. Here, however, Mr. Purbeck is challenging the recent (May, 2023) searches of his phones by the government – a challenge which he should be able to raise now because that is when the government action about which he is complaining has occurred.

### 1. The Eleventh Circuit's <u>Vedrine</u> decision.

Based on the language of <u>United States v. Vedrine</u>, No. 20-13259; No. 21-13624, 2022 WL 17259152 (11th Cir. Nov. 29, 2022), Mr. Purbeck's position has been that the government must complete its search of the seized cellphones within the 14 days called for by Federal Rule of Criminal Procedure 41. Specifically, the Eleventh Circuit Court of Appeals held, "we agree with our sister circuits that once the data is seized **and extracted** by law enforcement, the warrant is considered executed for purposes of Rule 41, and under Rule 41(e)(2)(B), law enforcement may analyze that data at a later date." <u>Vedrine</u>, <u>supra</u>, at *6 (emphasis added). Mr.

---

[1] (<u>See</u> Search Warrant No. 1:19-mj-10519-REB (United States District Court for the District of Idaho); a copy of which is attached to Mr. Purbeck's December 13, 2021 Notice of Filing as Exhibit F).

Purbeck's challenge is to the government's May, 2023 extractions from (searches of) the iPhones, not its analyzing this data once extracted. It is undisputed that the government did not extract the data until the last couple days of May, 2023 – almost four years after the government seized the phones, in fact, approximately 2.5 months shy of four years.

      The government's response in opposition to Mr. Purbeck's position is that Mr. Purbeck has "misread" Vedrine, even though Mr. Purbeck simply is reading the Eleventh Circuit's opinion as literally written. See id. According to the government, so long as it has seized the cellphone within 14 days of the warrant's issuance, it has complied with Rule 41, even though it may not actually extract or search that cellphone until some future date. Even assuming the government is correct that Rule 41 allows it to seize cellphones within 14 days of the search warrant's issuance and thereafter actually extract the data (i.e., actually searching the phone at a later date), it does not follow that the government may simply keep those cellphones for as long as it wants and search the phones years later. Indeed, the Fourth Amendment prevents the exact scenario being advanced by the government.

## 2. The Fourth Amendment governs the government's belated searches in 2023 of Mr. Purbeck's cellphones.

The reasonableness of the officer's acts both in executing the warrant and in performing a subsequent search of seized materials remains subject to judicial review. United States v. Hill, 459 F.3d 966, 978 (9th Cir. 2006); see also United States v. Cawthorn, No. CR JKB-19-0036, 2023 WL 5163359, at *5 (D. Md. July 13, 2023) (the "ultimate touchstone of the Fourth Amendment is reasonableness[;]" "thus the dispositive question here is whether the Government acted reasonably[;]" "given the vast trove of information that was entrusted to the Government, it was incumbent on the Government to have made every effort to conduct a reasonable review—both in timing and in scope—of that information."); United States v. Dixon, No. 3:20-cr-3-TCB-RGV, 2021 WL 1976679 (N.D. Ga. May 18, 2021) ("Under Federal Rule of Criminal Procedure 41(e)(2)(B), the later, offsite review of electronic evidence seized during the execution of search warrant is permitted so long as that review complies with the Fourth Amendment's reasonableness requirement."). "Although 'there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence falls within the scope of a warrant,' courts have recognized that 'the Fourth Amendment requires the government to complete its review, i.e., execute the warrant, with a 'reasonable' period of time.'" United States v. Wey, 256 F.

Supp.3d 355, 383 (S.D.N.Y. 2017) (citing United States v. Metter, 860 F.Supp.2d 205 (E.D.N.Y. 2012)); United States v. Nejad, 436 F. Supp.3d 707, 735 (S.D.N.Y. 2020) ("As both parties recognize, the review must also have been completed in a reasonable amount of time to comply with the Fourth Amendment and Rule 41's requirements governing the execution of search warrants").[2]

As Mr. Purbeck contended in his "Motion to Suppress 2023 Searches of I-Phones," the government's search of his iPhones almost 4 years after their seizure constitutes an unreasonable search that violates the Fourth Amendment. A search that may be reasonable at its inception may become unreasonable in its execution. And that is exactly what we have here. Accepting for sake of this argument that the government can seize Mr. Purbeck's cellphones and search them at some later date (more than 14 days following the warrant), that search is unreasonable when it occurs almost four years later.

It is undisputed that the government did not actually search/extract any data from either phone until almost four years after those phones were seized. In Dixon, this Court noted that a 24-month delay was "certainly lengthy," but under the

---

[2] The Department of Justice's internal manuals also agree that the "Fourth Amendment does require that forensic analysis of a computer be conducted within a reasonable time." See Executive Office for the United States Attorneys, Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations at 92 (available at www.justice.gov/file/442111/download, last accessed on 10/4/2023).

specific facts of that case not unreasonable. United States v. Dixon, No. 3:20-cr-0003-TCB-RGV, 2021 WL 2327063, at *6 (N.D. Ga. April 15, 2021).  The delay in Mr. Purbeck's case is almost double what this Court approved in Dixon. Mr. Purbeck submits that the almost 4-year delay violates the Fourth Amendment, particularly when, as discussed below, the government has had the passcodes to the cellphones since August 21, 2019, thereby undercutting the principal reason the government has advanced for this extremely lengthy delay.[3]

### 3. Mr. Purbeck is entitled to an evidentiary hearing.

On its face an almost 4-year delay in completing a search is unreasonable under the Fourth Amendment. An evidentiary hearing is required to establish if a factual basis exists to support the government's position that an almost 4-year delay is reasonable under the Fourth Amendment. Mr. Purbeck submits that such a delay is unreasonable and, further, that the government is going to be unable to show otherwise.

Furthermore, Mr. Purbeck specifically objects to any reliance on the statements in the government's brief regarding the facts of the government's

---

[3] As detailed in his motion, Mr. Purbeck has sought the return of his property, including by filing a motion under Federal Rule of Criminal Procedure 41(g) in January, 2021 for the return of his property (see Purbeck v. Wilkinson, No. 1:21-CV-0047-BLW (District of Idaho), Doc. 2) and pursuing an appeal after the district court denied his efforts to have his property returned. See Purbeck v. Wilkinson, No. 21-35467 (9th Cir.).

efforts (or lack of efforts) to access the iPhones. Representations have been made in the government's brief that it made efforts to access Mr. Purbeck's iPhones on December 23, 2020. Mr. Purbeck is unaware of anything produced in discovery that supports that statement. Upon inquiring of the government whether an FBI 302 report or any other memorialization of this proffered attempt to access the iPhones existed, the government advised that no such report existed.[4]

The same is true of the government's representations regarding subsequent efforts having been made to access one of the phones (the iPhone 7), allegedly on or about June 24, 2021, or the attempts to access both phones on or about September 7, 2022. Mr. Purbeck has located nothing in the discovery to support any of these alleged attempts. Upon inquiry by Mr. Purbeck, the government has advised that there are no reports documenting any pre-May 2023 attempts.

Additionally, there is no explanation for the delay from the first alleged attempt on December 23, 2020 until June 24, 2021 (the second alleged attempt as

---

[4] To be clear, Mr. Purbeck understands and believes that government's counsel was told (presumably by the case agents in this case) that prior attempts were made to access the iPhones, but without anything to corroborate these alleged attempts, and given the lack of other documentation of any of the efforts made to access the iPhones prior to May 30, 2023, Mr. Purbeck is entitled to an evidentiary hearing to develop the factual record on these matters. **This is particularly important because here, as shown below, Mr. Purbeck provided the FBI with the passcode for both phones on August 21, 2019, meaning that all the FBI had to do was enter the passcode and not sit on the phones for almost 4 years.** No explanation has been offered by the FBI as to why they did not simply use the passcodes Mr. Purbeck gave them.

to only one of the iPhones). Similarly, there is no explanation for the delay from June 24, 2021 to over a year later on September 7, 2022. These are all matters that the government has advanced as "evidence" of its reasonableness in accessing Mr. Purbeck's iPhones almost 4 years after seizing them, and yet there is no actual evidence of any of these events. Again, Mr. Purbeck objects to the Court relying on the government's undocumented representations, particularly when to Mr. Purbeck's understanding that the government has had the passcodes to both phones ever since August 21, 2019.

To Mr. Purbeck's understanding, on August 21, 2019, when the FBI Agents took Mr. Purbeck's phones, they also asked Mr. Purbeck for the passcodes, and Mr. Purbeck provided them.[5] That means that the government has had the means to access Mr. Purbeck's iPhones since August 21, 2019, and none of the almost 4-year delay was because of "encryption difficulties." Compare Dixon, supra.

Indeed, Mr. Purbeck's recollection that he provided the passcode to Agent Coffin is corroborated by Agent Coffin's own contemporaneous notes from August 21, 2019, which the government produced to Mr. Purbeck in discovery. (See

---

[5] Mr. Purbeck further recalls that, on August 21, 2019, either Agent Coffin or Agent Pinette opened both cellphones using the passcode provided by Mr. Purbeck and put the phones in airplane mode. It is unclear why the government waited 4 years and then used a brute force technique to search the iPhones when they had the passcode all along. These all would be areas of examination at an evidentiary hearing.

Exhibit KK, which is being filed under seal in an abundance of caution to comply with the Protective Order in this case). On the last page of Agent Coffin's notes is Mr. Purbeck's passcode for both phones: "pin = 222999." (See id. at FBI-004681). An excerpt from the last page of those notes is set forth below:

> Nate's tips + tricks
> Also a SQL Server with a lot of data
> Pwd may be in testmail account
> pin = 222999
> Sarah's address
> 15 N in Mt. Home

(See Exhibit KK, at FBI-004681). That is the very passcode that the government's documents show was used to open Mr. Purbeck's iPhone 8, as shown by the excerpt inset below.

**Target Device Information**

| | |
|---|---|
| Device Name | Rob's iPhone |
| Software Version | 11.4.1 [15G77] |
| Model | iPhone 8 Plus (Global) [iPhone10,2 D211AP] |
| Unique Device ID (UDID) | e042f1dd66f44c3b66482c69ea600a702ecbdf5a |
| Serial Number | DX3X11K3JCLQ |
| Unique Chip ID (ECID) | 4069366361202734 |
| ESN | 01ca7391ebe7f6dc |
| WiFi MAC Address | 74:9e:af:2c:77:70 |
| Bluetooth MAC Address | 74:9e:af:32:61:30 |
| Phone Number | 12088636957 |
| IMEI | 354838094781536 |
| Data Partition Size | 77.98GB (83735707648 bytes) |
| Lock State | Before First Unlock |
| Agent Version | 3.18.0 |
| Backup State | iCloud Backup, Last Backup Date: 2018-08-28  23:28:25 UTC |
| Owner Name | Rob Purbeck |
| Accounts | rpurbeck@gmail.com, jrjboise82@aol.com, robpurbeck@netzero.net |
| Passcode (or unlock mechanism) | 222999 |

(See Exhibit AA, attached to Defendant's Motion to Suppress [Doc. 99]; emphasis added for ease of reference). This is the same passcode that goes with the iPhone 7, although because the government used a brute force access software to access the iPhone 7, it shows as "Escrow Unlock" -- most likely because there was a master passcode set by Ada County for that phone that the FBI brute force software relied upon for access.

All of this will be developed further during an evidentiary hearing. Additionally, whether the iPhones were placed in airplane mode on August 21, 2019 (as Mr. Purbeck believes they were) should be determinable from an analysis of these phones. The main point for now, however, is that the government's main contention as to the basis for the four-year delay (that they could not access the iPhones because Mr. Purbeck had not provided them with the passcodes) is factually wrong. Compare United States v. Dixon, No.: 3:20-cr-3-TCB-RGV, 2021WL 1976679 (N.D. Ga. May 18, 2021) (finding two-year delay reasonable when it was "undisputed that the iPhone was locked with a passcode and that Dixon decided not to provide agents with his passcode."); United States v. Dixon, No.: 3:20-cr-3-TCB-RGV, 2021 WL 2327063 (N.D. Ga. April 15, 2021) (same: the "government's 24-month delay in searching the iPhone was 'certainly lengthy'" but nonetheless reasonable because the phone was encrypted and

defendant had not provided the passcode). Here, Mr. Purbeck gave the government the passcode on August 21, 2019, as corroborated in the government agent's own contemporaneously taken notes.

### 4. Mr. Purbeck has not waived his right to challenge the government's 2023 searches

Finally, the government has argued that Mr. Purbeck waived his right to challenge the government's searches of his cellphone in 2023 by not raising this argument in 2021. But the searches that Mr. Purbeck is challenging have just occurred. The government cannot have it both ways. They cannot seize his phones, hold them for years, and then search them years after the initial seizure, and yet claim that their recent searches of the phone are immune from Fourth Amendment scrutiny because Mr. Purbeck did not raise that argument over a year-and-a-half before those searches even occurred. Indeed, the courts have specifically recognized that the Fourth Amendment governs the reasonableness of searches no matter when they occur, including when the searches occur many months (or even years) later. See, e.g., United States v. Cawthorn, No. CR JKB-19-0036, 2023 WL 5163359, at *5 (D. Md. July 13, 2023); United States v. Dixon, No. 3:20-cr-3-TCB-RGV, 2021 WL 1976679 (N.D. Ga. May 18, 2021); United States v. Nejad, 436 F. Supp.3d 707, 735 (S.D.N.Y. 2020); United States v. Wey, 256 F. Supp.3d

355, 383 (S.D.N.Y. 2017); United States v. Metter, 860 F.Supp.2d 205 (E.D.N.Y. 2012)).

Neither the Federal Rules of Criminal Procedure nor this Court's Local Rules change the Fourth Amendment's governing the reasonableness of a search, and that reasonableness must be measured at the time of the search. Here, Mr. Purbeck is challenging the searches of the iPhones that the government chose to conduct at the end of May of 2023. The government produced copies of those searches on or about July 7, 2023, and Mr. Purbeck promptly filed his motion to suppress those searches thereafter (along with a motion for leave to file his motion to suppress, which the Court granted). Mr. Purbeck is entitled to challenge violations of his Fourth Amendment rights as they occur, and the Court should reject the government's attempt to impose a "prognosticate future government constitutional violations" requirement onto Mr. Purbeck. He challenged the searches of his iPhones soon after learning about them, and he is entitled to a substantive ruling from the Court on the lawfulness of those searches. Accordingly, Mr. Purbeck has not waived his right to challenge the searches of his iPhones.

WHEREFORE, for the foregoing reasons and also stated in his motion to suppress 2023 searches of iPhones, Mr. Purbeck respectfully requests that the

Court (1) hold an evidentiary hearing on all matters raised in his motion to suppress and any others that may be developed at the hearing, (2) establish a briefing schedule for all parties to address the issues raised in this motion to suppress and developed at the evidentiary hearing, and (3) thereafter grant this motion and suppress and exclude from evidence any and all information, material, items, or evidence gathered from the illegal detentions, searches, seizures and interrogations detailed in this motion.

Respectfully submitted, this 6th day of October, 2023.

/s/ *Andrew C. Hall*_____
Andrew C. Hall
Georgia Bar No. 318025
Hall Hirsh Hughes, LLC
150 E. Ponce de Leon Ave., Suite 450
Decatur, Georgia 30030
404/638-5880 (tel.)
404/638-5879 (fax)
andrew@h3-law.com
*Counsel for Defendant Robert Purbeck*

<u>CERTIFICATE OF COMPLIANCE WITH TYPE AND FONT</u>

<u>AND CERTIFICATE OF SERVICE</u>

I hereby certify that this motion has been prepared in Times New Roman font (14 pt.) and consistent with the Local Rules of this Court.

I further hereby certify that I have this date caused a true and correct copy of the foregoing REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS 2023 SEARCHES of IPHONES to be served by filing it with the Court's ECF filing system, which provides email service to:

Assistant United States Attorney Michael Herskowitz and Alex Sistla

This 6th day of October, 2023.

<u>/s/ Andrew C. Hall</u>
Andrew C. Hall